*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0163P (6th Cir.)
File Name: 04a0163p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JGR, INC.,
      *Plaintiff-Appellee/*
*Cross-Appellant,*

    *v.*

THOMASVILLE FURNITURE
INDUSTRIES, INC.,
      *Defendant-Appellant/*
*Cross-Appellee.*

Nos. 02-3640/3731

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 96-01780—Ann Aldrich, District Judge.

Argued: January 29, 2004

Decided and Filed: June 3, 2004

Before: MARTIN and MOORE, Circuit Judges; WEBER,
Senior District Judge.[*]

---

[*] The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:** Michelle J. Sheehan, REMINGER & REMINGER, Cleveland, Ohio, for Appellant. Marvin L. Karp, ULMER & BERNE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Michelle J. Sheehan, Roy A. Hulme, REMINGER & REMINGER, Cleveland, Ohio, for Appellant. Marvin L. Karp, ULMER & BERNE, Cleveland, Ohio, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. In this diversity breach of contract action, Thomasville Furniture Industries, Inc. appeals a $1,500,000 judgment in favor of JGR, Inc., and JGR cross-appeals the denial of pre-judgment interest. We note at the outset that although it is unclear whether "JGR, Inc." is the actual, formal name of the plaintiff company – as opposed to an abbreviation – we refer to it as such because the parties have done so. For the reasons discussed below, we hold that the district court abused its discretion in permitting a JGR witness to give lay opinion testimony about JGR's lost profits and loss of business value, and that the improper admission of this testimony requires vacature of the damages award and remand for a new trial solely on the issue of damages.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The contract at issue in this case is a written agreement called the "Thomasville Furniture Industries, Inc. 'Thomasville Gallery' Program" – which we will refer to as the "Gallery Agreement" – that governs the relationship

between Thomasville, a furniture manufacturer, and furniture retail establishments that Thomasville approves as "Thomasville Galleries." Pursuant to the Gallery Agreement, Thomasville Galleries were "expected to" abide by certain rules and requirements, such as maintaining a high quality store, allowing Thomasville to exercise control over personnel training, signage and other aspects of the business, and – most importantly for purposes of this appeal – displaying Thomasville products in an area that conformed to detailed specifications. In exchange, Thomasville offered its Thomasville Galleries assistance with interior design, advertising and research, as well as a non-exclusive license to use Thomasville trademarks in connection with product promotions.

If a retailer wished to be designated a Thomasville Gallery and agreed to the terms set forth in the Gallery Agreement, its representative would sign the last page of the program description and submit it to Thomasville for approval. This is what Gerald Yosowitz, JGR's main principal, did on behalf of JGR in April 1990, and Thomasville approved JGR as a Thomasville Gallery the following month. The version of the Gallery Agreement that was in effect at that time provided, among other things, as follows:

2. *Expectations of Retailers*. Retailers designated as Thomasville Galleries will be expected to:

(a) Set aside a physically separate and distinct area of its selling floor space with a minimum of 5,000 square feet for the sole and exclusive purpose and function of arranging, selling, and displaying Thomasville furniture products, including both Thomasville wood furniture and Thomasville upholstery.

On September 15, 1990, JGR opened a furniture store in Mentor, Ohio, called "Gerald's," with a 5,000-square foot

display area devoted solely to Thomasville products, as specified in the 1990 Gallery Agreement. Gerald's was located across the street from another furniture store, called "Furniture Land," which was owned and operated by an individual named Mike Baker.[1] Despite a promising beginning, Gerald's eventually began to lose money and JGR became unable to pay Thomasville for the products that it purchased for its Gerald's store. Thomasville provided credit counseling services to JGR, but was forced to begin holding orders until JGR could pay for them.

In March 1992, Thomasville revised its Gallery Agreement. The most significant change, for purposes of this case, was the addition of an "expectation" that Thomasville Galleries would "*[d]isplay Thomasville product covering at least 7,500 sq. ft. of selling floor space* of which a physically separate and distinct area of no less than 5,000 sq. ft. (the "Gallery") is set aside for the sole and exclusive purpose and function of arranging, selling, and displaying Thomasville wood, upholstery, and other Thomasville home furnishings products." (Emphasis added.) A March 10, 1992, letter written by Thomasville Vice President Daniel Grow highlights this change and states that Thomasville Galleries "should establish a plan to be at this new minimum square footage level of 7,500 sq. ft. by January 1, 1993. Any new Galleries will be at the 7,500 sq. ft. level when they open."

Yosowitz, on behalf of JGR, signed and returned the revised Gallery Agreement to Thomasville with handwritten notes on the back. These notes state, in relevant part:

. . . I sign this agreement under the condition that all other Thomasville dealers in my marketing area are held

---

[1] Prior to forming the JGR business, Yosowitz worked with Baker at Furniture Land. According to Yosowitz, his relationship with Baker deteriorated following his departure from Furniture Land.

to the same conditions . . . . If I correctly understand the letter from Dan Grow (dated 3/10/92) which spells out Thomasville's new guidelines (including square footage requirements) all Thomasville dealers existing or new will be held to the same requirements. If this is in fact the case my concearns [sic] have been addressed . . . .

In a letter dated August 4, William Carrico, also a Thomasville Vice President, acknowledged Yosowitz's notes and stated that Thomasville would "review the matter by July 1, 1993," after letting "matters settle out."

In the meantime, in the fall of 1992 Thomasville negotiated with Furniture Land, JGR's competitor, a different marketing agreement, called the "Thomasville Home Furnishings Store Agreement." Pursuant to this agreement, the name of the Furniture Land chain would be changed to "Baker's" and the chain would carry the Thomasville line in seven stores, including the one across the street from Gerald's, as well as in a brand new 10,000 square foot store devoted solely to Thomasville products. In November 1992, pursuant to the Home Furnishings Agreement, Furniture Land changed the name of all its stores in the Cleveland area to "Baker's" and kicked off a "grand re-opening" of the store across the street from Gerald's. Baker's advertised this grand opening with a circular featuring its new "Thomasville Gallery" line of furniture. JGR alleges that Baker's displayed only a few isolated pieces of Thomasville furniture at its grand opening. According to JGR, Baker's employees urged its customers to view the entire line of Thomasville furniture at Gerald's, but to purchase the items at Baker's. Baker's customers allegedly were handed cards that stated: "Go to Gerald's. Bring back a price and we'll beat it by five percent."

The day after the Baker's grand opening, in light of JGR's mounting financial problems and debts, Thomasville placed JGR's credit on hold and refused to process or ship any orders from Gerald's until JGR sent full payment for those orders.

Ultimately, no longer able to continue doing business, Gerald's closed its doors on October 2, 1993.

Although each party in this case has asserted various claims against the other,[2] the sole claim with which we are concerned in this appeal is JGR's claim that Thomasville breached the 1992 Gallery Agreement. The essence of that claim is that Thomasville breached the Agreement by permitting Baker's to sell Thomasville furniture without requiring Baker's to "[d]isplay Thomasville product covering at least 7,500 sq. ft. of selling floor space of which a physically separate and distinct area of no less than 5,000 sq. ft. (the "Gallery") is set aside for the sole and exclusive purpose and function of arranging, selling, and displaying Thomasville wood, upholstery, and other Thomasville home furnishings products." This claim was the subject of a jury trial featuring the testimony of several witnesses. JGR presented the only damages witness, a certified public accountant and lawyer named James Gornik. Gornik testified as to the amount of lost profits and loss of business value that JGR suffered as a result of Thomasville's alleged breach of the 1992 Gallery Agreement. Thomasville filed a motion *in limine* to exclude Gornik's testimony on the ground that it

---

[2]On July 1, 1996, Thomasville filed suit in the district court against JGR to collect approximately $665,000 for furniture and service charges that JGR owed to Thomasville. JGR subsequently filed suit against Thomasville in Ohio state court, alleging that Thomasville's breach of the 1992 Gallery Agreement and fraudulent misrepresentation caused JGR to go out of business. Thomasville removed that suit to federal court and filed a motion for summary judgment on all of JGR's claims. On September 7, 1999, the district court granted Thomasville's motion for summary judgment in its entirety. JGR then filed a motion for reconsideration, arguing that the district court had misinterpreted the nature of its claim for breach of the 1992 Gallery Agreement. The district court denied the motion and JGR appealed. On appeal, this Court reversed and remanded the case for further proceedings with respect to that claim. This appeal relates solely to the proceedings on remand concerning that breach of contract claim.

was properly the subject of expert testimony, not lay opinion testimony, but that he was not qualified to give expert testimony. The district court denied Thomasville's motion, and Gornik proceeded to testify about projections that he had prepared showing what JGR's net income would have been in each year from 1991 through 2005 and what the net worth and value of the business would have been at the end of each of those years.

The jury determined that Thomasville had, in fact, breached the 1992 Gallery Agreement and that JGR was entitled to a damages award of $0 for lost profits and $1,500,000 for loss of business value. Thomasville subsequently filed a Rule 50 motion for judgment as a matter of law, arguing that the jury verdict had no basis for an award of loss of business value. The district court denied the motion. JGR filed a motion for pre-judgment interest pursuant to Ohio Revised Code section 1343.03(A). While the district court initially granted the motion and awarded pre-judgment interest at the rate of 3.73%, Thomasville filed a motion for reconsideration of that award, which the district court granted. On reconsideration, the district court changed its original ruling and declined to award any pre-judgment interest. Judgment was entered for JGR in the amount of $1,500,000. Thomasville appealed the district court's $1,500,000 judgment in favor of JGR, and JGR cross-appealed the denial of its motion for pre-judgment interest.

## II. *ANALYSIS*

### A. *Testimony of James Gornik*

The primary issue in this case concerns the admissibility of testimony by JGR witness James Gornik, a certified public accountant and lawyer who testified about the amount of lost profits and loss of business value that JGR allegedly suffered as a result of Thomasville's breach of contract. We review a district court's evidentiary rulings for abuse of discretion.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 822 (6th Cir. 2000). Thomasville argues that the district court abused its discretion in permitting Gornik to testify as a lay witness. JGR, on the other hand, argues that the district court in fact permitted Gornik to testify as an expert witness, not a lay witness, and that although no formal hearing was conducted pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court nevertheless properly determined that he was qualified to give expert testimony.

The first issue that we must resolve is whether the district court permitted Gornik to testify as a lay witness or as an expert witness. Fortunately, the record is replete with explicit statements by the district court indicating that Gornik was a lay witness and was permitted to testify as such. For example, in a colloquy with counsel regarding Thomasville's motion to exclude Gornik's testimony, the court reasoned: "But I don't remember having *Daubert* extended to a CPA who basically is, in this case, a factual witness. He does their books."[3] The following morning, after conducting additional research, the district court confirmed that Gornik would not be characterized as an expert witness and, therefore, "there is no *Daubert* analysis to be done." Moreover, the district court explicitly stated: "I'm glad nobody is asking me to call this man an expert . . . I wouldn't want to have a *Daubert* hearing on his methodologies."

---

[3] The district court's apparent assumption that Gornik was a "factual witness" who "does [JGR's] books" is false. In fact, Gornik was never an accountant for JGR and never did its books. His first experience with JGR was in March 1999, when he was contacted by JGR's trial counsel for the purpose of "putting down on paper what the financial statements of Gerald's Furniture would have looked like had the Thomasville support to the business continued and had the owners been able to carry through on how they planned to operate the business."

Thus, the record unequivocally indicates that the district court permitted Gornik to testify as a lay witness, not an expert witness, and that no inquiry was made as to Gornik's qualifications to testify as an expert witness. Therefore, the question to which we now turn is whether the district court abused its discretion in permitting Gornik to testify as a lay witness. *See United States v. Anderskow*, 88 F.3d 245, 249 (3d Cir. 1996) ("we review the admission of . . . opinion testimony under Rule 701 for abuse of discretion"); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 459 (5th Cir. 1996) (admission of lay testimony under Rule 701 is reviewed for abuse of discretion).

A lay witness – i.e., one who "is not testifying as an expert" – may only testify as to:

> opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701. Subsection (c) was added to this rule in 2000 in order to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." FED. R. EVID. 701, Advisory Committee Notes for the 2000 Amendments.[4]

---

[4] Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

The Advisory Committee Notes for the 2000 Amendments further explain that:

> [M]ost courts have permitted the *owner or officer* of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, *but because of the particularized knowledge that the witness has by virtue of his or her position in the business.* The amendment does not purport to change this analysis.

*Id.* (emphasis added) (citation omitted).

The explanation set forth in the Advisory Committee Notes is reflected in the recent Fifth Circuit case of *Dijo, Inc. v. Hilton Hotels Corp.*, which is strikingly similar to the case *sub judice*. In *Dijo*, the Fifth Circuit held that the district court abused its discretion in permitting a "a financial consultant" to testify as a lay witness regarding the plaintiff company's lost profits. 351 F.3d 679, 685-87 (5th Cir. 2003). Although the witness was the plaintiff's "primary contact" at a commercial lending facility with which the plaintiff had a business relationship, he had not served as an owner or officer of the plaintiff company. *Id.* at 685. Additionally, the witness's "opinion . . . was based on preliminary income figures and other information that he had received from [the plaintiff's founder]," and his "appraisal was not based upon his own independent knowledge or observations." *Id.* at 686.

---

reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

In considering whether the witness was properly permitted to give lay opinion testimony concerning lost profits, the Fifth Circuit reasoned:

It is telling that DIJO responds . . . not with evidence of [the witness]'s involvement with [the plaintiff] or the Project, but only emphasizing [his] substantial business experience. . . Such generic industry experience does not pass Rule 701 scrutiny. [The plaintiff] never attempted to qualify [the witness] as an expert; and a lay witness who was never employed by or directly involved in a business is unlikely to have the type of first-hand knowledge necessary to provide reliable forecasts of future lost profits. The further removed a layman is from a company's day-to-day operations, the less likely it is that his opinion testimony will be admissible under Rule 701.

*Id.* Thus, in light of the witness's lack of "the requisite first-hand, personal knowledge" of the company about which he testified, the Fifth Circuit held that the district court abused its discretion in permitting the witness to give lay opinion testimony under Rule 701. *Id.* at 686-87.

The same is true in this case. Like the witness in *Dijo*, Gornik has never been an owner, officer or director of JGR. Additionally, the information upon which he relied in making his calculations of lost profits and loss of business value came primarily from Yosowitz, and Gornik admitted that he did not independently verify much of that information.[5] Therefore, Gornik had no basis upon which to offer lay opinion testimony about JGR's lost profits or loss of business value, and the district court abused its discretion in admitting that testimony.

---

[5] Gornik testified: "Our role was not to verify a whole lot of things . . . I only verified them against my own experience."

Moreover, the improper admission of Gornik's testimony affected Thomasville's substantial rights. *See id.* at 687. For whatever reason, Gornik was the only witness called by either party to testify as to the issue of damages, and – although he was subject to cross-examination – Gornik's testimony about the amount of JGR's damages was unchallenged by any other witness.

For these reasons, we hold that the improper admission of Gornik's lay opinion testimony requires vacature of the jury's damage award and remand for a new trial solely on the issue of damages. *See id.* at 687. In light of this holding, we need not consider Thomasville's other arguments concerning the damages award or JGR's cross-appeal regarding the denial of pre-judgment interest. We must, however, consider two additional arguments that Thomasville has raised.

### B. *Evidence of Alleged Oral Contract*

Thomasville's remaining two arguments concern the admission of evidence about an alleged oral contract between JGR and Thomasville. JGR had previously alleged that Thomasville orally promised JGR that it would not sell Thomasville furniture to Baker's. This alleged oral promise was the subject of a prior breach of contract claim that is not at issue here. Nevertheless, the district court permitted Yosowitz to mention this alleged oral promise in his trial testimony, over Thomasville's objection. Thomasville later submitted proposed jury interrogatories that it claimed were necessary to ensure that the jury did not focus upon the testimony concerning the alleged oral contract, but the district court declined to submit the interrogatories to the jury. Thomasville argues that the admission of Yosowitz's testimony about the alleged oral contract was irrelevant under Rule 401 and unfairly prejudicial under Rule 403, and that the district court abused its discretion in refusing to submit Thomasville's proposed interrogatories to the jury.

The district court recognized that the oral promises at issue were "not part of the [1992 Gallery Agreement]," but admitted some evidence of the alleged oral contract as "background testimony regarding the relationship between JGR and Thomasville Furniture prior to the 1992 agreement." The district court cautioned JGR's counsel not to "dwell" on the evidence and explicitly instructed the jury that:

> the sole issue in this case is whether Thomasville breached the 1992 agreement. Should you consider evidence regarding written or oral statements or acts of JGR, Thomasville Furniture, or other parties prior to the 1992 agreement, consider it only to the extent that it helps you understand the intentions of JGR and Thomasville Furniture with regard to that 1992 agreement.

Based upon our thorough review of the record, we conclude that the district court committed no abuse of discretion in admitting some evidence relating to the alleged oral contract for the limited purpose of background information, particularly in light of its instruction to the jury, which we must presume was followed.

We also conclude that the district court did not abuse its discretion in declining to submit Thomasville's proposed interrogatories to the jury. Federal Rule of Civil Procedure 49(b) permits a trial court to submit interrogatories to a jury on issues of fact that are necessary for a verdict, but the rule does not require the court to do so. It is well established that it "is in the [trial] court's discretion whether to submit written interrogatories in connection with a general verdict." *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1520 (6th Cir. 1990). In this case, the district court instructed the jury to determine whether "Thomasville Furniture breached their 1992 agreement by breaching a representation, or understanding, that any new Thomasville dealer would be held to the same square footage requirements that were being

imposed on JGR." This instruction – particularly in combination with the court's other jury instructions – was proper and served the purposes that Thomasville's proposed interrogatories were intended to serve.

### III. *CONCLUSION*

For the foregoing reasons, we AFFIRM the district court's judgment insofar as it reflects the jury's verdict as to liability, but we VACATE the jury's damages award and REMAND for a new trial solely on the issue of damages.