In the Matter of the Complaint of ILLU-SIONS HOLDINGS, INC., As Owner of the Vessel Illusions for Exoneration from and Limitation of Liability.

No. 98 Civ. 4486 RMB.

United States District Court,
S.D. New York.

Nov. 1, 1999.

David R. Hornig, Nicoletti, Hornig & Sweeney, New York City, for Petitioner.

William R. Fried, Wagner, Davis & Gold, PC, New York City, for Respondent.

1. *See* discussion of Fed.R.Civ.P. 26, below.

## DECISION AND ORDER

BERMAN, District Judge.

Steven M. Wagner ("Wagner" or "Claimant") seeks damages resulting from injuries he allegedly sustained (to his shoulder) while scuba diving in the British Virgin Islands on December 23, 1994. Wagner alleges that the injury resulted from the negligence of Illusions Holdings, Inc. ("Illusions" or "Petitioner"), which is the owner of the boat named ILLUSIONS from which the dive was conducted. ILLUSIONS' Captain Tom Zurich ("Zurich") led the dive.

Wagner has moved, *in limine*, to preclude at the forthcoming trial of this case the testimony of Joe Giacinto ("Giacinto"), the President of BVI Dive Operators Association, and Michael Van Blaricum ("Van Blaricum"), the owner of Kibrides Sunchaser Scuba, two non-party witnesses who were deposed by Illusions, purportedly as "fact" or "lay" witnesses. Wagner asserts that the testimony of Giacinto and Van Blaricum was elicited as expert testimony by Illusions. Because Illusions did not comply with the requirements of Rule 26 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") relating to disclosure of expert testimony,[1] Wagner contends that the testimony of both witnesses should be precluded. Wagner also contends that he should be awarded the costs of the instant motion and the costs of attending the Giacinto and Van Blaricum depositions.

**For the reasons set forth below, Wagner's motion is granted.**

### I. *Background*

In November 1998, Illusions advised Wagner that it would be deposing Tom Zurich, who, as noted, was the captain of ILLUSIONS at the time of Wagner's diving accident in Tortola, British Virgin Islands. On December 2, 1998, counsel for Illusions wrote to counsel for Wagner, and advised that Zurich's deposition would be conducted on January 14, 1999. In the same letter, counsel for Illusions stated, for the first time, his intention to depose Giacinto and Van Blaricum, "both of whom are familiar with dive sights in the British Virgin Islands, the local

current conditions, dive procedures and the suitability of the dive sight where Steven Wagner was injured for conducting recreational dives by a certified diver with Mr. Wagner's experience in open water diving." (Hornig Letter dated December 2, 1998).

On December 11, 1998, Wagner served a Demand for Report of Expert Witness on Illusions. Counsel for Wagner also telephoned counsel for Illusions and offered to reschedule the depositions of Giacinto and Van Blaricum to allow Illusions additional time to provide expert reports for the two witnesses. A letter confirming the telephone conversation and confirming Wagner's objection to the testimony of the two witnesses without prior disclosure of expert reports was sent to Illusions on December 11, 1998.

By letter dated December 15, 1998, counsel for Illusions rejected Wagner's request for expert disclosure stating that "[i]t is our opinion that these witnesses are not experts, however, we note your contentions and arguments that their testimony may be interpreted to be expert testimony. In any event, the trial court will ultimately rule on the issue of whether their testimony is admissible at the trial of this action." (Hornig Letter dated December 15, 1998).

Accordingly, the depositions of Giacinto and Van Blaricum were conducted over the objections of Wagner on January 13, 1999 in Virgin Gorda, British Virgin Islands.

## II. *Analysis*

Fed.R.Civ.P. 26(a)(2)(B) provides as follows:

Except as otherwise stipulated or directed by the court, this disclosure shall, **with respect to a witness who is retained or specifically employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.** The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. (emphasis added).

Fed.R.Civ.P. 26(b)(4)(A) provides, in relevant part, that "[i]f a report from the expert is required under subdivision (a)(2)(B), **the deposition shall not be conducted until after the report is provided.**" (emphasis added).

Fed.R.Civ.P. 37(c)(1) provides, in relevant part, as follows:

**A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.** In addition to or in lieu of this sanction, the court, on motion, and after affording an opportunity to be heard, may impose other appropriate sanctions . . . . (emphasis added).

Testimony by expert witnesses is governed by Federal Rule of Evidence ("Fed.R.Evid." or "Rule") 702, which provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Opinion testimony by lay witnesses is governed by Fed.R.Evid. 701 which provides that:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The distinction between lay and expert opinion testimony has been the topic of con-

siderable discussion, if not debate. In fact, certain of the Fed.R.Evid. (e.g., Rules 701, 702 and 703) are currently the subject of (re)analysis and proposed revision by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States ("Standing Committee").[2] The proposed revisions must also be reviewed by the United States Supreme Court and Congress before they can take effect.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the leading decision on expert testimony, the United States Supreme Court has held that the (earlier) *Frye* test has been superseded in Federal proceedings by the Fed.R.Evid.[3] *Id.* at 589 n. 6, 113 S.Ct. 2786. The Supreme Court contemplated "a gatekeeping role for the [Federal trial] judge," stating that the Rules "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597, 113 S.Ct. 2786. The Supreme Court has recently elaborated on the holding in *Daubert*, stating "that Daubert's ... holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999) (citation omitted).

Since *Daubert*, the line between lay witness (opinion) testimony, governed by Rule 701, and expert witness (opinion) testimony, governed by Rule 702, has sometimes seemed blurred. For example, in *Doddy v. Oxy USA, Inc.*, 101 F.3d 448 (5th Cir.1996), the Court of Appeals for the Fifth Circuit

held that "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *Id.* at 460 (citing *Brady v. Chemical Construction Corp.*, 740 F.2d 195, 200 (2d Cir. 1984)).[4]

On the other hand, in *Asplundh Manufacturing Division v. Benton Harbor Engineering*, 57 F.3d 1190 (3d Cir.1995), the Court of Appeals for the Third Circuit held that:

> Though we agree ... that the admission of lay opinion evidence in these technical areas (e.g., concerning the existence vel non of a product defect or whether an accident was caused by a certain condition) can result in an attenuated form of expert opinion evidence far removed from the consideration ... animating the lay opinion rule, it is not for us to rewrite the rule or reinterpret Rule 701 across the board. **Accordingly, we refuse to hold, ... that all lay witnesses offering opinions that require special knowledge or experience must qualify under Rule 702.**

*Id.* at 1200–01 (emphasis added). The Third Circuit went on explicitly to call for a "brightening" of the line between opinion testimony under Rules 701 and 702, observing that:

> We believe, however, that such distinctions can and might well be made by the drafters of the Federal Rules, in that, as our discussion suggests, a better formulation of the lay opinion rule would perhaps eliminate these matters from the ambit of Rule 701. Such an approach has been adopted by some states ... We take the liberty of commending this issue to the attention of

---

**2.** "The Judicial Conference of the United States is the principal policy-making body for the federal court system. The Chief Justice serves as the presiding officer of the Conference, which is composed of the chief judges of the 13 courts of appeals, a district judge from each of the 12 geographic circuits, and the chief judge of the Court of International Trade." News Release, *Judicial Conference Adopts Rules Changes—Confronts Projected Budget Shortfalls*, Administrative Office of the U.S. Courts, Sept. 15, 1999.

**3.** Some state courts have not embraced *Daubert. See, e.g., Brim v. State of Florida*, 695 So.2d 268,

271–72 (Fla.1997)("[d]espite the federal adoption of a more lenient standard in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* ... we have maintained the higher standard of reliability as dictated by *Frye* ") (citation omitted).

**4.** In *Brady*, a case decided prior to *Daubert*, the Court of Appeals for the Second Circuit stated that an investigator's "conclusions did not require any specialized knowledge and could have been reached by any ordinary person. He thus testified as a lay witness." *Brady*, 740 F.2d at 200.

the Judicial Conference Advisory Committee on Rules of Evidence ...

*Id.* at 1201 n. 14.[5]

In the instant case, having reviewed the deposition transcripts of Giacinto and Van Blaricum, the Court is convinced that the testimony at issue involves expert, not lay, opinion(s).[6] For example, Giacinto testified as follows:

Q: Can you tell me generally what the currents are generally in this area or if they vary—

\* \* \*

A: I would say currents in general are not a problem in the British Virgin Islands. However, some of the dive sites—and not all, certainly not all. Some of the dive sites can during certain tidal movements become less desirable to dive than others because of current situations.

Q: What about visibility generally?

A: Visibility is usually very good.

Q: And what does that mean, just because you're depth scope might be read—

A: Very good. I would say for us, I mean, average is more than 60 feet. And in the world, 60–foot visibility as an average would be extremely good.

\* \* \*

Q: When rising—when using a BC [buoyancy control device] to rise from the bottom, is it necessary to inflate it slightly to get some positive buoyancy?

A: You don't, you don't as a rule use that to raise yourself from the bottom.

Q: You just swim up?

A: You can, but you swim up slowly so you can control your ascent.

Q: Okay.

A: Air in a BC can be a problem and cause too fast an ascent.

Q: Can a BC also be used as a flotation device on the surface?

A: Absolutely.

(Giacinto Deposition Transcript at 9–11, 16–17).

Similarly, Van Blaricum testified as follows:

Q: Okay. And what's the function of a BC?

A: Flotation at the surface, neutral buoyancy at depth.

Q: And what's the—a person's diving off an inflatable, what's the procedure for getting off your BC if there is one?

A: Well, it depends on the type of BC. Some of them you would have shoulder straps that you just unclip real quick and undo the waistband and the whole thing falls off of you basically.

Some you would have to work your arms out if it doesn't have the clips, you know. You could pull it off over your head or you could dive down underneath it or slide down underneath it and lift your arms and it floats off over the top of you.

Q: Is there any preferable practice when a diver's going to go into a dinghy to take his BC with his tank and octopus off before getting in the boat or does he get in with the equipment on or is it optional?

A: It would be optional, you know. It depends on the individual, you know. Most people probably would take it off though just to have less weight to carry into the boat.

Q: Now if the BC has been inflated so it acts as a lifevest, is it any more difficult to get it off than if it's not inflated?

A: It would be a little more restrictive, but if it had buckles on it, you just pop the buckles and the whole thing pops off, you know. If it doesn't have buckles—in over 90 percent of them now, they do. If it didn't have buckles, you'd want to

---

**5.** As discussed herein, the Standing Committee has examined this issue and has proposed amendments to Rules 701, 702 and 703.

**6.** Both Giacinto and Van Blaricum testified that they: (i) were not present at the time Wagner was injured; (ii) did not know Wagner; and (iii) knew nothing about the circumstances which lead to Wagner's injury.

let a little air out first. It would just be easier.

(Van Blaricum Deposition Transcript at 13–14).

In addition, the two witnesses acknowledged that they were called upon to provide expert testimony. Giacinto testified as follows:

Q: And what was it that you understood you were going to be testifying about?

A: **Conditions and my opinion on conditions in the BVI [British Virgin Islands].**

(Giacinto Deposition Transcript at 23)(emphasis added). Similarly, Van Blaricum testified as follows:

Q: Did you have any conversation with [counsel for Illusions] about this deposition before—

A: **He called and asked if I knew of the area and if I could be of assistance in expertise of being here for 10 years.**

(Van Blaricum Deposition Transcript at 17)(emphasis added).

The advisory committee notes to Fed. R.Evid. 702 (concerning testimony by experts) explain that:

**The rule is broadly phrased.** The fields of knowledge which may be drawn upon are not limited merely to the "scientific" or "technical" but extend to all "specialized" knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training or education." Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values. (emphasis added).

The testimony of Giacinto and Van Blaricum reflected in their depositions and concerning,

among other things, scuba diving training methods, procedures for scuba diving, and their opinions about currents, water temperature, visibility, and certain dive sites in the British Virgin Islands "surely satisfy this broad [expert] definition." *Queen v. Washington Metropolitan Area Transit Authority,* 842 F.2d 476, 482 (D.C.Cir.1988). Counsel for Wagner was disadvantaged (harmed) in deposition cross-examination by the absence of required disclosure under Fed.R.Civ.P. 26. Because Illusions did not comply with the disclosure requirements of Fed.R.Civ.P. 26, in the face of Wagner's request that it do so, the testimony of Giacinto and Van Blaricum may not be used at trial. *See* Fed.R.Civ.P. 37(c)(1).[7]

Not only is the preclusion of Giacinto and Van Blaricum's testimony required under current law, it is also consistent with the proposed amendment to Fed.R.Evid. 701:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue **and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.** (emphasis added).

The advisory committee notes to the proposed amendment to Fed.R.Evid. 701 state that "[t]he amendment makes clear that **any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules.**" (emphasis added). That is the case here. That is, the testimony of Giacinto and Van Blaricum is clearly based upon "specialized knowledge" (i.e., their diving expertise) within the scope of Rule 702 and is, therefore, subject to the disclosure requirements

---

**7.** The testimony of Giacinto and Van Blaricum does not qualify as lay opinion testimony because it does not satisfy the requirements of Rule 701. Their testimony does not, for example, relate to the incident at bar or to the specific dive site where Wagner allegedly sustained his injury.

(*See* Wagner's Reply Br. at 4–9). The testimony of Giacinto and Van Blaricum would not, among other things, be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed.R.Evid. 701.

of Fed.R.Civ.P. 26. Since Illusions refused to make the disclosures required under Fed. R.Civ.P. 26, the testimony of Giacinto and Van Blaricum may not be used at trial.

### III. *Conclusion*

For the foregoing reasons, Wagner's motion *in limine* is granted. At the close of trial, the Court will request additional written submissions from counsel concerning the costs incurred by Wagner for attending the depositions of Giacinto and Van Blaricum and for preparing the instant motion.