OPINION OF THE COURT
 

 Ciparick, J.
 

 The issue before this Court is whether a plaintiff who was injured while unloading a truck can recover damages from the truck’s owner pursuant to Vehicle and Traffic Law § 388 (1) when the truck itself was not the instrumentality that caused the injury. Finding the issue to be an open one, the United States Court of Appeals for the Second Circuit certified the following questions to this Court:
 

 “Whether, under New York’s Vehicle and Traffic Law Section 388 (1), loading and unloading constitute ‘use or operation’ of a vehicle.
 

 
 *558
 
 “Whether, under New York’s Vehicle and Traffic Law Section 388 (1), the vehicle must be the proximate cause of the injury before the vehicle’s owner may be held vicariously liable.”
 

 We answer the first question in the affirmative and the second in the negative.
 

 I.
 

 The tort action here results from injuries suffered by plaintiff Arthur Argentina when a steel plate fell on him while he was unloading cargo from a truck owned by defendant Emery World Wide Delivery Corporation. Argentina and his spouse sued Emery in the United States District Court for the Southern District of New York, claiming that Emery was liable for their damages under Vehicle and Traffic Law § 388 (1), which imposes liability on all vehicle owners for accidents resulting from negligence in the permissive “use or operation” of their vehicles. The parties agree for purposes of this Court’s determination that Ever Sharpe Delivery Services, Inc. (now defunct and no longer sued by plaintiffs) negligently loaded the steel plate onto the truck at Newark International Airport before plaintiff attempted to unload the cargo at Emery’s terminal at John F. Kennedy International Airport. After Emery filed a third-party complaint against Argentina’s employer, P. Chimento, Inc., Emery and Chimento (collectively defendants) moved for summary judgment.
 

 The District Court assumed without deciding that loading and unloading constitute “use or operation” under section 388 (1), but, relying on
 
 Walton v Lumbermens Mut. Cas. Co.
 
 (88 NY2d 211), granted defendants’ motions on the ground that the vehicle itself was not a proximate cause of the injury. After plaintiffs appealed to the Second Circuit, that Court certified the above questions to us.
 

 II.
 

 While Vehicle and Traffic Law § 388 (1) does not itself speak to whether loading and unloading fall within its reach, the history of the provision makes clear that those activities are indeed covered. Section 388 (1) is derived from former section 59 of the Vehicle and Traffic Law of 1929, which in turn was derived from former section 282-e of the Highway Law of 1909. Until 1958, those statutes imposed liability on a vehicle’s owner for injuries resulting from negligence in the permissive “operation” of a motor vehicle
 
 (see,
 
 Vehicle and Traffic Law of 1929 former § 59; Highway Law of 1909 former § 282-e).
 

 
 *559
 
 In 1957, the Law Revision Commission concluded that the word “operation” as used in former section 52 of the Vehicle and Traffic Law had been interpreted too narrowly by some courts. Section 52 designated the Secretary of State as the person to receive service of process for all nonresident owners of vehicles who “operated” them and were involved in accidents in New York
 
 (see,
 
 Vehicle and Traffic Law former § 52). The Law Revision Commission was critical specifically of those cases that had read “operation” of a vehicle to exclude “various acts done with or to the vehicle when it is not actually in motion, such as unloading or making repairs,” all of which dealt with injuries incurred while a vehicle was being unloaded (1958 Report of NY Law Rev Commn, at 648, 1958 NY Legis Doc No. 65 [H], at 22, citing
 
 Mulligan v Jersey Truck Renters,
 
 196 Misc 828;
 
 Brown v Hertz Drivurself Stas.,
 
 203 Misc 728;
 
 DeLuca v Consolidated Frgt. Lines,
 
 132 F Supp 863).
 

 In order to forestall further narrow readings of “operation,” the Commission recommended, and the Legislature enacted, new versions of sections 52 and 59 to add “use” everywhere that “operation” appeared
 
 (see,
 
 L 1958, ch 568, § 1; L 1958, ch 577, § 1). As the Law Revision Commission explained, the changes were necessary to extend the application of the provisions to cases where an accident occurs during the use of the vehicle that “is not technically an ‘operation’ of the vehicle under the narrow construction given to the term ‘operate’ by some decisions” (1958 Report of NY Law Rev Commn, at 631, n, 1958 NY Legis Doc No. 65 [G], at 5, n). The change from “negligence in the operation” to “negligence in the use or operation” of a vehicle in what is now section 388 (1) thus signaled that the Legislature intended the statute to include loading and unloading.
 

 Notably, the statute has not been limited to situations where the vehicle is in motion
 
 (see, Elfeld v Burkham Auto Renting Co.,
 
 299 NY 336, 345;
 
 Eckert v Farrington Co.,
 
 262 App Div 9,
 
 affd
 
 287 NY 714;
 
 see also, Guadagno v H. S. Trucking,
 
 29 AD2d 979;
 
 Aranzullo v Collins Packing Co.,
 
 18 AD2d 1068). The inclusion of loading and unloading of a vehicle
 
 [1]
 
 within the statute’s protections thus also fits logically with previous interpretations of the law and continues to fulfill the primary legislative objective, which is “to provide recourse to an injured
 
 *560
 
 party against a person, financially able to respond, without whose conduct in permitting use of the vehicle the accident would not have happened” (1958 Report of NY Law Rev Commn, at 593, 1958 NY Legis Doc No. 65 [G], at 7;
 
 see also,
 
 Vehicle and Traffic Law § 310 [2] [declaration of purpose]).
 

 Finally, we disagree with defendant’s contention that a New York Department of Insurance regulation (11 NYCRR 60-1.1 [c] [3] [iii]) compels a different result. Under the regulations, an owner, as the named insured, is covered for accidents arising out of the use or operation by permissive users of a motor vehicle (11 NYCRR 60-1.1 [a]). However, as noted by defendants, the policy need not cover the liability of a third party for accidents occurring in the loading or unloading of the vehicle (11 NYCRR 60-1.1 [c] [3] [iii]). Thus, in this case, neither Chimento, Argentina’s employer, nor Ever Sharpe Delivery, who loaded the truck, needed to be an “insured” under Emery’s policy, but the regulation still required this accident to be covered under Emery’s policy from the standpoint of Emery’s liability. The scope of Emery’s policy as required under regulations interpreting the Motor Vehicle Financial Security Act (Vehicle and Traffic Law § 310
 
 et seq.),
 
 however, does not define the reach of vicarious liability under section 388 (1).
 

 Thus, we answer the first certified question in the affirmative: a vehicle’s owner can be vicariously liable under section 388 (1) for injuries resulting from a permissive user’s negligent loading and unloading.
 

 III.
 

 The second question, to which we now turn, probes the limit of an owner’s vicarious liability by asking whether the vehicle itself must be a
 
 [2]
 
 proximate cause of plaintiffs injury. In resolving this issue, the District Court mistakenly relied upon the case of
 
 Walton v Lumbermens Mut. Cas. Co. (supra,
 
 88 NY2d 211). In
 
 Walton,
 
 the accident occurred when a “levelator,” a separate device used to convey goods from a truck to the loading dock, tipped over, tossing defendant to the ground. There we were asked to interpret a provision in the No-Fault Insurance Law — “for loss arising out of the use or operation * * * of such motor vehicle”
 
 (see,
 
 Insurance Law § 5103 [a] [1]). We
 
 *561
 
 held that where a person’s injuries while unloading a truck were produced by an instrumentality other than the vehicle itself, first-party benefits under the No-Fault Insurance Law were not available.
 

 Based on the similarity of language of Insurance Law § 5103 (a) (1) and Vehicle and Traffic Law § 388 (1) and because both provide recovery for injuries from motor vehicle accidents, the District Court in this case held that section 388 (1) should be interpreted synonymously with the No-Fault Law. Since there were no allegations that “the placement of the truck or any other condition of the vehicle contributed to this injury,” defendants, in the District Court’s view, were entitled to summary judgment. Although
 
 Walton
 
 and the No-Fault Law provide a tempting analogy, the No-Fault Law’s linguistic resemblance to section 388 (1) is not enough to compel the conclusion that the vehicle must be the instrumentality that causes or contributes to the injury. The two laws are distinct, with different purposes.
 

 The No-Fault Insurance Law provision at issue in
 
 Walton
 
 stated that a person is entitled to first-party benefits from the insurer of a vehicle for losses arising out of the use or operation of such motor vehicle regardless of fault (Insurance Law § 5103 [a] [1]). The legislative history behind that statute indicated that where “plaintiff’s injury was caused by an instrumentality other than the insured vehicle, liability for the losses sustained are more properly addressed outside the area of no-fault motor vehicle insurance”
 
 (Walton v Lumbermens Mut. Cas. Co., supra,
 
 at 214). As a result, “[a] person engaged in loading and unloading the vehicle may be using it within the meaning of the statute, but that does not necessarily mean that his or her injuries arose out of the use of the vehicle”
 
 (id,.,
 
 at 216). Indeed, Walton’s injuries did not arise out of the use or operation of the truck, but instead out of the use and operation of the'levelator.
 

 Walton
 
 created a needed limit to the benefits of no-fault insurance in line with that law’s purposes. “Its purposes were to remove the vast majority of claims arising from vehicular accidents from the sphere of common-law tort litigation, and to establish a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of such accidents”
 
 (Walton v Lumbermens Mut. Cas. Co., supra,
 
 88 NY2d, at 214). As then-Governor Rockefeller explained in his Memorandum approving the bill, the No-Fault Law assured that every auto accident victim would be compensated promptly
 
 *562
 
 without regard to fault, that “the vast majority of auto accident negligence suits” would be eliminated, “freeing our courts for more important tasks,” and that “substantial premium savings [would accrue] to all New York motorists” (Governor’s Approval Mem, L 1973, ch 13, § 1, reprinted in 1973 NY Legis Ann, at 298;
 
 see also,
 
 Comment,
 
 New York Adopts No-Fault: A Summary and Analysis,
 
 37 Albany L Rev 662).
 

 Additionally, no-fault insurance avoids litigation costs including the burden of attorneys’ fees that cut into the amounts ultimately received by accident victims
 
 (see,
 
 Prosser and Keeton, Torts § 84, at 600-607 [5th ed]). No-fault insurance works to ameliorate these problems, but not all injuries in and among motor vehicles were meant to benefit from the expediency provided by the No-Fault Law.
 

 The purpose of section 388 (1) of the Vehicle and Traffic Law is different. Unlike the No-Fault Law, it is not meant to be an expedient in procuring coverage for losses due to motor vehicle use, but instead to ensure recourse to the vehicle’s owner, a financially responsible party
 
 (Morris v Snappy Car Rental,
 
 84 NY2d 21, 27;
 
 Fried v Seippel,
 
 80 NY2d 32, 41). Section 388 (1) also seeks to discourage owners from permitting people who are irresponsible or who might engage in unreasonably dangerous activities to use their vehicles
 
 (Fried v Seippel, supra).
 

 Furthermore, section 388 (1) differs from Insurance Law § 5103 (a) (1) in that it relies on the traditional limitation on recovery — proof of fault. Section 388 (1) only encompasses injuries “resulting from
 
 negligence
 
 in the use or operation” (emphasis added) of a motor vehicle. The fault requirement thus shifts the emphasis of the statute and gives it a different limiting principle from that of the No-Fault Law. This Court has specifically noted that “it may not be desirable or even rational * * * to attenuate the concept of use indefinitely”
 
 (Breen v Cunard Lines S. S. Co.,
 
 33 NY2d 508, 511). The proximate cause limitation in
 
 Walton
 
 was necessary to avoid an overbroad application of the No-Fault Law. No similar concern arises regarding section 388 (1) since it comes with a built-in limitation. Negligence in the use of the vehicle must be shown, and that negligence must be a cause of the injury
 
 (see, Martin v Herzog,
 
 228 NY 164).
 

 Having different purposes, section 5103 (a) (1) of the Insurance Law and section 388 (1) of the Vehicle and Traffic Law should not be interpreted identically. The touchstone of no-
 
 *563
 
 fault liability is loss from the use or operation of a vehicle regardless of fault. It was enacted to compensate for injuries without proving negligence. On the other hand, the touchstone of section 388 (1) is injury resulting from the negligence in the use or operation of a vehicle. Here, it is uncontroverted for the purposes of this case that the truck was negligently loaded, a use contemplated by the Legislature. To read an additional limitation into section 388 (1) and require that the vehicle itself be the instrumentality or a proximate cause of plaintiffs injury "would tend to circumvent the statute’s negligence requirement and unduly limit its intended beneficial purpose.
 

 Thus, we answer the second certified question in the negative: for claims under section 388 (1) of the Vehicle and Traffic Law, the vehicle itself need not be a proximate cause of the injury.
 

 Accordingly, the first certified question should be answered in the affirmative, and the second certified question should be answered in the negative.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Wesley and Rosenblatt concur.
 

 Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question No. 1 answered in the affirmative and certified question No. 2 answered in the negative.
 

 [2]
 

 . The certified question states “the” proximate cause, which implies the sole proximate cause of the injury. Since there may be more than one proximate cause of an injury (see,
 
 Forte v City of Albany,
 
 279 NY 416, 422; PJI 2:71), we consider the question to ask whether the vehicle was “a” proximate cause of the injury.