**James BLACK, Plaintiff,**

v.

**CONSOLIDATED FREIGHTWAYS CORP. OF DELAWARE and Freeman Decorating Co., Defendants.**

**No. 00 CV 6569(ILG).**

United States District Court, E.D. New York.

June 3, 2002.

---

John O. Fronce, Thurm & Heller LLP, New York City, for plaintiff.

Andrew Friedman, Friedman, Khafif & Associates, LLP, Brooklyn, NY, for defendants.

### MEMORANDUM & ORDER

GLASSER, District Judge.

This negligence action arises out of injuries sustained by plaintiff James Black ("Black") when he fell through a hole in a trailer owned by defendant Consolidated Freightways Corporation of Delaware ("Consolidated") and leased to defendant Freeman Decorating Company ("Freeman"). Consolidated now moves for summary judgment, arguing that it had no actual or constructive knowledge of the hole in the trailer. For the reasons set forth below, Consolidated's motion is granted.

**1.** A "special employee," under New York's Workers' Compensation Law, is an individual who, while working as the general employee of one employer, is transferred for some peri-

### BACKGROUND

The relevant facts, viewed in the light most favorable to plaintiff (as this Court must do on a motion for summary judgment by the defendant, *see Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987)), are as follows.

■ Black was employed by the Jacob Javits Center as a forklift operator. (Friedman Aff. ¶ 2.) Black also was a "special employee" of Freeman. (*Id.*)[1] On May 20, 2000, Black was working with another forklift operator, Richard Beschner ("Beschner"), loading trade show materials onto a trailer owned by Consolidated and leased to Freeman. (*Id.*) Beschner's job was to operate the forklift, while Black's job was to direct the forklift onto the trailer and stabilize the load on the forklift, when necessary. (*Id.;* Fronce Decl. ¶ 9.) On that fateful day, Black made between six and eight trips onto the trailer without incident. (Fronce Decl. ¶ 10; Black Dep. at 77–78.)

However, on his last trip into the trailer, Black was attempting to stabilize a load on the forklift when he stepped into what he described as a "jagged hole," which "looked like a rip right in the floor" of the trailer. (Black Dep. at 89.) Black described the hole as 8 inches wide and between 10 and 14 inches long. (*Id.*) Black did not see the hole on any of his prior trips into the trailer, nor did he see it on his final trip, prior to being injured. (*Id.* at 85.) Although there were no lights inside the trailer, Black testified that the trailer was partially illuminated by the headlights on the forklift, and that the portion of the trailer where the hole was located was within this zone of illumination. (*Id.* at 142–43.)

od of time to the service of another employer. *See, e.g., Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 557, 578 N.Y.S.2d 106, 108, 585 N.E.2d 355 (1991).

Black then commenced this action against Consolidated and Freeman in New York Supreme Court, Kings County, on October 11, 2000. Black alleges that Consolidated and Freeman were negligent in their "ownership, operation, management, supervision, maintenance, repair and control" of the trailer. (Compl. ¶ 19 (a copy of which is annexed to the Fronce Decl. as Ex. A).) On November 1, 2000, prior to Consolidated being served, Freeman removed the action to this Court, asserting diversity jurisdiction. The parties subsequently agreed to dismiss the case vis-a-vis Freeman, because it is "immune from suit pursuant to the Workers' Compensation Law." (Friedman Aff. ¶ 3.)

With discovery now complete, Consolidated has moved for summary judgment. According to Consolidated, Black is unable to establish Consolidated's liability in this case, because Black has failed to demonstrate that Consolidated had either actual or constructive notice of any problem with the trailer. (*See* Def. Mem. at 4–6.) In response, Black argues that this case is governed by Section 388 of the New York Vehicle and Traffic Law, and thus the notice issue is immaterial. (*See* Friedman Aff. ¶¶ 10–12.) Black also argues that, even if Section 388 of the Vehicle and Traffic Law does not apply, summary judgment is nevertheless improper, because (i) there is a dispute concerning whether Consolidated had constructive notice of the hole in the trailer floor (*see id.* ¶¶ 21–22),[2] (ii) Consolidated negligently failed to inspect the trailer, which would have uncovered the defect (*see id.* ¶¶ 16–17); and (iii) Consolidated was negligent in failing to provide adequate lighting inside the trailer (*see id.* ¶ 20).

**2.** The Court notes that certain paragraphs of the Friedman Affidavit are misnumbered; the references in this Memorandum and Order

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A "moving party is entitled to judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks and citations omitted). In deciding a summary judgment motion, a court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). A disputed fact is material only if it might affect the outcome of the suit under the governing law. A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a reasonable jury could return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In assessing the record to determine whether there is a genuine issue of fact, the court is required to draw all inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

Additionally, summary judgment is "highly unusual" in a negligence case, because such a case requires a determination of the reasonableness of a party's conduct, and "the assessment of reasonableness generally is a factual question to be ad-

are to the paragraphs as if correctly numbered.

dressed by the jury." *King v. Crossland Sav. Bank,* 111 F.3d 251, 259 (2d Cir.1997); *accord Hood v. Regency Maritime Corp.,* No. 99 Civ. 10250, 2000 WL 1761000, at *2 (S.D.N.Y. Nov.30, 2000); *Ortiz v. Rosner,* 817 F.Supp. 348, 350 (S.D.N.Y.1993). Nevertheless, "the mere fact that a case involves a claim of negligence does not preclude a granting of summary judgment." *Cummiskey v. Chandris, S.A.,* 719 F.Supp. 1183, 1186 (S.D.N.Y.1989); *accord Hood,* 2000 WL 1761000, at *2 (citing *Cummiskey* ).

## II. *Consolidated's Motion for Summary Judgment Should be Granted*

### A. *Consolidated Cannot be Held Liable Under Vehicle & Traffic Law § 388*

 Black's first argument in opposition to Consolidated's summary judgment motion is that it need not establish that Consolidated had actual or constructive notice of a problem with the trailer; rather, Black asserts that Consolidated may be held liable for the negligence of Freeman, the lessee, pursuant to Section 388 of the New York Vehicle and Traffic Law.[3] Section 388 provides, in relevant part, that "[e]very owner of a vehicle used or operated in this state shall be liable and responsible for . . . injuries to persons . . . resulting from negligence in the use or operation of such vehicle . . . by any person using or operating the same with the permission . . . of such owner." N.Y. Veh. & Traf. L. § 388(1).[4] According to Black, the loading and unloading activities at the Javits Center constitute "use and operation" of the trailer such that any negligence on the part of Freeman may be imputed to Con-

solidated pursuant to Section 388. Consolidated has failed to respond to this argument.

 Black is correct that loading and unloading a vehicle constitutes "use and operation" of that vehicle under Section 388. *See, e.g., Argentina v. Emery World Wide Delivery Corp.,* 93 N.Y.2d 554, 558, 693 N.Y.S.2d 493, 496–97, 715 N.E.2d 495 (1999) ("While Vehicle and Traffic Law § 388(1) does not itself speak to whether loading and unloading fall within its reach, the history of the provision makes clear that those activities are indeed covered."); *Smith v. Zink,* 274 A.D.2d 885, 886, 711 N.Y.S.2d 594, 596 (3d Dep't 2000). Thus, Section 388(1), on its face, would appear to permit any negligence of Freeman to be imputed to Consolidated. This fact, however, does not help Black to overcome Consolidated's summary judgment motion, for the reasons set forth below.

 Black has conceded that his negligence claim against Freeman is barred by New York's Workers' Compensation Law. One of the purposes of the exclusivity provisions of the Workers' Compensation Law is to prevent the possibility of double recovery—once under the Workers' Compensation statute, and once under a common-law negligence theory. *See Werner v. State,* 53 N.Y.2d 346, 354, 441 N.Y.S.2d 654, 658, 424 N.E.2d 541 (1981). If Black is permitted to proceed against Consolidated because of the provisions of Vehicle and Traffic Law Section 388, he would be able to make an end-run around the exclusivity provisions of the Workers' Compensation statute, and might be able to recover twice

---

**3.** The Court agrees that this diversity action is governed by New York law. A federal court sitting in diversity applies the law of the forum state and, in tort actions, New York courts generally apply the law of the jurisdiction where the tort occurred. *See Velez v. Sebco Laundry Systems, Inc.,* No. 00 CIV 5027, 2001 WL 43609, at *2 (S.D.N.Y. Jan.16, 2001); *Franklin v. Krueger Int'l, Inc.,* No. 96 CIV 2408, 1997 WL 691424, at *3 n. 1 (S.D.N.Y. Nov. 5, 1997).

**4.** A trailer is a "vehicle" under Section 388(1). *See* N.Y. Veh. & Traf. L. § 388(2).

for his injuries. Stated differently, even though Section 388 on its face permits any negligence by Freeman to be imputed to Consolidated, it would be improper to impute negligence to Consolidated in this case, because any negligence claim against Freeman is barred by the Workers' Compensation Law, and thus there is nothing to impute to Consolidated.[5]

In similar circumstances, New York courts have rejected attempts by plaintiffs to avoid the reach of the Workers' Compensation Law by invoking Section 388(1). For example, in *Rose v. Gelco*, 261 A.D.2d 381, 688 N.Y.S.2d 259 (2d Dep't 1999), the plaintiff tripped over a fire extinguisher in a van which his employer, Whirlpool, had leased from defendant Gelco. The plaintiff then sued Gelco, among others, for his injuries. The trial court dismissed the complaint vis-a-vis Gelco, and the Appellate Division affirmed. The court stated that "[s]ince Whirlpool is immune from suit under the Workers' Compensation Law, there can be no liability imputed to Gelco as owner of the van." *Id.* at 382, 688 N.Y.S.2d at 260 (citations omitted).

Similarly, in *Chiriboga v. Ebrahimoff,* the plaintiff, a parking garage attendant, was injured when his co-worker backed into him while trying to park a customer's car. 281 A.D.2d 353, 354, 722 N.Y.S.2d 533 (1st Dep't 2001). The plaintiff then sued the owner of the car, invoking Section 388(1) of the Vehicle and Traffic Law. The trial court denied the car owner's motion for summary judgment, reasoning that although the Workers' Compensation Law barred an action against the plaintiff's co-worker, the Workers' Compensation Law did not insulate the car owner from suit under Section 388(1). The Appellate Division reversed, and dismissed the complaint

against the car owner. The court concluded that the car owner could not be vicariously liable under Section 388(1), because any claim against the co-worker was barred by the Workers' Compensation Law, and thus no negligence could be imputed to the car owner. *Id.* at 354, 722 N.Y.S.2d at 534.

For these reasons, Black's claim against Consolidated, to the extent it is predicated on the negligence of Freeman pursuant to Section 388(1) of the Vehicle and Traffic Law, must fail.

### B. *Black's Claims of Direct Negligence by Consolidated Fail*

Although Consolidated cannot be held responsible for any negligence by Freeman in light of the Workers' Compensation Law, it is clear that claims of negligence by Consolidated independent of its relationship with Freeman are not barred. *See, e.g., Christiansen v. Silver Lake Contracting Corp.*, 188 A.D.2d 507, 508, 591 N.Y.S.2d 189, 191 (2d Dep't 1992) (vicarious liability claims against vehicle owner barred, but independent negligence claim viable). In his opposition, Black asserts three such claims. Accordingly, the Court turns to those allegations.

#### 1. *Constructive notice of the hole*

Consolidated argues, and Black concedes, that in order to be held liable for injuries resulting from the hole in the trailer, Consolidated must have had actual or constructive notice of the hole, or must have created the hole. (*See* Def. Mem. at 4–6; Friedman Aff. ¶ 15.) Black first argues that "Consolidated had constructive notice of the condition of the trailer floor in that the hole at issue was in such a

---

**5.** Indeed, the purpose of the Workers' Compensation Law would be thwarted in this situation, because Consolidated could assert claims for contribution against Freeman

(which would not be barred by the Workers' Compensation Law), thereby allowing Black to recover from Freeman indirectly.

dilapidated state that it had to exist for a substantial period of time prior to plaintiff's fall." (Friedman Aff. ¶ 22.)

In support of this contention, Black proffers the affidavit of Beschner, in which Beschner states the following:

Immediately after Mr. Black's accident I observed a dangerously large and deep hole in the wooden flooring of the trailer. The hole was approximately fourteen inches long, 10 inches wide, and twelve inches deep. The hole's size, depth, and wear indicated that the hole had been in existence for a long period of time. It certainly had been in place for a long time prior to the moment of the accident. Indeed, in that the trailer was empty prior to its loading by myself and Mr. Black, the hole had to have existed prior to the time the trailer was driven into the loading bay. Also, we were in the process of loading empty crates into the trailer. The crates were on pallets. It would have been impossible for the hole to have been created by any of our actions in loading the trailer. I am personally aware that the trailer had been empty for approximately one hour while sitting in the loading bay prior to our commencing to load it. The hole had to exist for at least that length of time.

As a forklift operator, I would regularly load and unload trailers similar to the one at issue. I also have extensive experience in working with trailers having wooden floors such as the flooring in the trailer at issue. I am fully familiar with the wear and tear these trailers take, and with the existence of depressions and holes in the flooring. Based on my experience loading and unloading trail-

ers for many years, and my observation of the hole Mr. Black fell into[,] it is clear and apparent that the hole on the trailer floor where Mr. Black fell was extremely worn and dilapidated. For the hole to be in the condition it was in, and the size it was, the hole had to have existed for weeks or months prior to Mr. Black's fall.

(Beschner Aff. ¶¶ 3–4.) These conclusory statements are insufficient to establish Consolidated's constructive notice of the hole in the trailer floor, for numerous reasons.

 First, it appears that Black has attempted to proffer Beschner as an expert "in lay witness clothing." Fed. R.Evid. 701 Advisory Committee's Notes, 2000 Amendments. Beschner's statements—which concededly are based on his "extensive experience working with trailers having wooden floors"—are predicated on "specialized knowledge," and thus fall within the ambit of Rule 702 of the Federal Rules of Evidence.[6] There is no evidence that Beschner has been disclosed as an expert witness; instead, it appears that Beschner simply is a lay witness attempting to provide expert testimony. Accordingly, Beschner's opinion that the hole must have existed for a sufficient length of time such that it should have been discovered by Consolidated is inadmissible. *See, e.g.,* 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 701.03[4][b] (Matthew Bender 2d ed.2002) ("courts should not permit lay witness[es] to give what is essentially expert opinion testimony"); *Certain Underwriters at Lloyd's London v. Sinkovich,* 232 F.3d 200, 203 (4th Cir.2000) (Rule 701 "generally does 'not permit a lay witness

---

6. Indeed, the Advisory Committee's Notes to Rule 702 state that "[t]he rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all

'specialized' knowledge. *Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.'* " (emphasis added).

to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness'") (citation omitted); *Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 460 (5th Cir.1996) ("a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person") (citation omitted); *see also In re Illusions Holdings Inc.,* 189 F.R.D. 316, 318–20 (S.D.N.Y.1999).

Furthermore, even if admissible, the affidavit does nothing to substantiate Black's claim that Consolidated was on constructive notice of the hole. The affidavit merely asserts that the hole must have existed for "weeks or months prior to Mr. Black's fall." (*Id.* ¶ 4.) Yet the trailer was not in Consolidated's possession after December 1999, at the latest; rather, Freeman was in possession of the trailer from that time forward. (*See* Friedman Aff. ¶ 22; Fronce Decl. ¶ 14; Frey Aff. ¶ 4.) Thus, even crediting Beschner's assertions regarding the length of time the hole existed, the affidavit does not demonstrate that the hole "existed for a sufficient length of time prior to the accident to permit [Consolidated] to discover and remedy it." *Shildkrout v. Bd. of Educ. of City of N.Y.,* 173 A.D.2d 603, 604, 570 N.Y.S.2d 183 (2d Dep't 1991).

■ Finally, Beschner's assertions regarding the size, depth and wear of the hole add little to the mix. It is unclear to the Court how the size or depth of a hole somehow suggests that it existed for a long period of time—it would seem that the only possible basis from which it may be concluded that the hole existed for a substantial period of time is the "wear" on the hole. Beschner, however, nowhere details the purported "wear," nor does he discuss how this "wear" somehow suggests that the hole was present for a sufficiently

long period of time that Consolidated should have had notice thereof. Beschner's bald assertion that the wear on the hole indicated it had been there long enough for Consolidated to know about it is nothing more than speculation insufficient to establish constructive notice. *See Scola v. Sun Int'l N. Am.,* 279 A.D.2d 466, 467, 719 N.Y.S.2d 107, 108 (2d Dep't 2001) (conclusory and speculative allegations in expert's affidavit regarding length of time coffee spill existed insufficient to establish constructive notice).

### 2. *Negligent inspection*

■ Black next argues that Consolidated created the defective condition in the trailer because Consolidated failed to properly inspect the trailer. Black asserts that such an inspection "would have alerted [it] to the hazardous condition of the trailer floor." (Friedman Aff. ¶ 17.) This argument is completely unsubstantiated, and thus is insufficient to defeat Consolidated's motion for summary judgment. *See* Fed. R.Civ.P. 56(e) (party opposing summary judgment must come forward with specific facts and evidence demonstrating a genuine factual issue). Indeed, Black has submitted no evidence whatsoever indicating that a non-negligent inspection of the trailer would have led to the discovery of the hole, probably due to the fact that there is no evidence demonstrating how long the hole existed. Furthermore, Black's argument is undermined by his admission that he did not see the hole in the floor prior to his accident, despite the fact that he entered and exited the trailer between six and eight times prior to getting injured. Accordingly, Black's "negligent inspection" theory fails. *See, e.g., Velez v. Sebco Laundry Sys., Inc.,* 178 F.Supp.2d 336, 341 (S.D.N.Y.2001) (rejecting negligence claim based on failure to inspect where plaintiff did not "offer *any* evidence to support her assertions," such as "expert testimony or other evidence demonstrating that a rea-

sonably prudent technician would have found the defect during a regularly scheduled inspection") (emphasis in original); *Buria v. Rosedale Eng'g Corp.*, 7 A.D.2d 486, 487, 184 N.Y.S.2d 395, 397 (1st Dep't 1959) ("Liability does not attach merely because a proper inspection *could* have shown the timer to have been defective. The proof must be that the inspection *would* have shown that to be the case.") (emphases in original).[7]

3. *Inadequate lighting in the trailer*

Black's final argument is that Consolidated created a defective condition in the trailer by failing to provide adequate lighting therein. (Friedman Aff. ¶ 20.) Black's argument is meritless. None of the cases cited by Black holds that the owner of a trailer which is not publicly accessible owes a duty to provide adequate lighting inside that trailer. However, even if such a duty existed, Black's inadequate lighting theory still fails, because Black has failed to establish that the lack of lighting proximately caused his injuries.

 In order to state a claim for negligence, a plaintiff must establish that the defendant's negligence proximately caused his injuries, *i.e.*, the negligence "was a substantial cause of the events which produced the injury." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666 (1980). The Court cannot conclude, on the facts of this case, that Consolidated's failure to light the inside of the trailer was a "substantial" cause of Black's injuries. Black's argument is presumably predicated on the theory that, had there been adequate lighting in the trailer, he would

have seen the hole and would not have stepped into it. However, Black testified that the portion ·of the trailer where the hole was located was illuminated by the headlights on the forklift. (*See* Black Dep. at 142–43.) Thus, the failure to light the inside of the trailer had a minimal connection, at best, with Black's injuries. Accordingly, because it does not appear that the failure to light the inside of the trailer was a "substantial" cause of his injuries, Black's inadequate lighting claim fails.

**CONCLUSION**

"Proof of negligence in the air, so to speak, will not do." *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 341, 162 N.E. 99 (1928) (citations omitted). At best, that is all that is presented here. For this reason, and the reasons set forth above, Consolidated's motion for summary judgment is granted.

SO ORDERED.

---

7. In support of his negligent inspection theory, Black cites *French v. Ehrenfeld*, 180 A.D.2d 895, 579 N.Y.S.2d 480 (3d Dep't 1992). *French*, however, does not aid Black's case. There, the trial court did not permit the plaintiff to submit an expert report opining that it was industry custom to inspect newly installed fireplaces. The Appellate Division reversed, ruling that the plaintiff could establish a standard of care through evidence suggesting industry practice or custom. *Id.* at 896, 579 N.Y.S.2d at 481. The concerns addressed in *French* therefore are not implicated in this case.