[940 NYS2d 619]

Kendra Cividanes, Respondent, v City of New York, Defendant, and Manhattan and Bronx Surface Transit Operating Authority et al., Appellants.

First Department, March 22, 2012

## APPEARANCES OF COUNSEL

*Wallace D. Gossett,* Brooklyn (*Lawrence A. Silver* of counsel), for appellants.

*Burns & Harris,* New York City (*Blake G. Goldfarb* and *Judith F. Stempler* of counsel), for respondent.

## OPINION OF THE COURT

RENWICK, J.

In this action to recover damages for personal injuries, plaintiff alleges that she was injured when she stepped into a hole and fell after alighting from a bus owned and operated by defendants. The court below properly rejected defendants' al-

legations that the No-Fault Insurance Law, which would have required plaintiff to establish that she sustained a serious injury as a result of the accident, applies to this matter. The controlling precedent is *Walton v Lumbermens Mut. Cas. Co.* (88 NY2d 211 [1996]), which holds that for the No-Fault Law to apply, the vehicle must be the proximate cause of the plaintiff's injuries.

This dispute arises from an accident that occurred on the morning of May 28, 2008. Plaintiff was allegedly injured as she exited a bus owned and operated by defendants Manhattan and Bronx Surface Transit Operating Authority and New York City Transit Authority (defendants). Plaintiff testified at a General Municipal Law § 50-h hearing that as she exited the rear of the bus, she "stepped off the last step into a hole and fell." She stated that the bus did not pull completely into the bus stop; she was let out "in front of the bus stop." The bus continued on its route. She described the hole into which she stepped and fell as being "pretty far away from the curb;" while the front of the bus "pulled about a foot away from the curb," the "back of the bus was on an angle, so it was further away from the curb."

At the scene, plaintiff's left ankle started to swell. An ambulance arrived, and took her to Jacobi Medical Center's emergency room, where the staff took X rays of her left ankle, but found no break or fracture. They wrapped the ankle with a bandage, gave her crutches and told her to visit her primary care doctor. Plaintiff was released the same day. The following day, plaintiff went to the emergency room of Montefiore Medical Center by taxi, because the pain in her ankle was "too much with the Ibuprofen." At Montefiore, they prescribed a higher dose of Ibuprofen, rewrapped her ankle with an air cast and discharged her. She returned to Montefiore the same day, and was prescribed Percocet. Her primary care physician referred her to an orthopedist, who prescribed a new type of pain medicine and physical therapy, and sent her for an MRI. Plaintiff testified that she was confined to her home "[m]ostly the first week" and confined to her bed the "first few days, about two or three days."

After plaintiff commenced this action, alleging that defendants were negligent in failing to provide a safe and adequate place for her to enter and exit the bus, defendants Manhattan and Bronx Surface Transit Operating Authority and New York City Transit Authority (defendants) moved for summary judgment, arguing that plaintiff did not sustain a serious injury under Insurance Law § 5102 (d). In support of their motion, defendants

submitted affidavits from an orthopedist and a neurologist who each conducted an independent physical examination of plaintiff. Their individual examination of the left knee similarly revealed normal range of motion. The MRI of plaintiff's left ankle, as reviewed by defendants' radiologist, did not reveal tendinopathy, ligamentous injury or fracture. Because both the orthopedist and neurologist diagnosed plaintiff as having suffered a resolved sprained left ankle, they similarly opined that plaintiff had not suffered a serious injury as a result of the accident.

In opposition, plaintiff argued that she was injured after she exited the bus and therefore was not a "covered person" pursuant to the No-Fault Law who has to satisfy the "serious injury" threshold. Plaintiff further argued that defendants' liability did not arise from its "use and operation" of the bus, but "rather from its duty to provide plaintiff with a safe place" to alight from the bus. Alternatively, plaintiff argued that if the threshold statute were to apply, defendants failed to meet their burden on summary judgment. Finally, plaintiff argued that, if defendants were found to have met their burden, she raised a triable issue of fact by the submission of objective medical evidence. Essentially, plaintiff submitted the affirmed report of an orthopedist who examined her 12 days after the fall and an MRI of her left knee, dated June 17, 2008, which revealed some swelling. The orthopedist's examination revealed moderate limitations in the range of motion of plaintiff's left ankle.

The court rejected defendants' argument that plaintiff's accident arose from the use or operation of the bus so as to implicate the No-Fault Law. The court reasoned that "[t]he accident did not occur because of the inherent nature of the bus, it occurred outside the bus; the bus itself did not produce the injury." The court further noted that defendants did not address whether, as a common carrier, they breached their duty to stop the bus at a place where plaintiff could safely disembark. Accordingly, the court denied defendants' motion, prompting this appeal.

One of the main features of the No-Fault Insurance Law is that it limits the right to bring a personal injury action for damages arising out of an automobile accident (Insurance Law § 5104 [a]). On the one hand, "first-party benefits," also referred to as basic economic loss coverage, are available to a

"covered person" regardless of fault (*id.*).[1] On the other hand, in exchange for receiving such no-fault benefits, a person injured in an automobile accident may bring a plenary action in tort to recover for noneconomic loss but only if he or she has suffered a "serious injury" within the meaning of the No-Fault Law (*Oberly v Bangs Ambulance*, 96 NY2d 295, 296-297 [2001]).

In this case, where plaintiff alleges only noneconomic loss, it cannot be seriously disputed that she did not suffer a serious injury as defined by Insurance Law § 5102 (d). Defendants established lack of serious injury by submitting, inter alia, the affirmed reports of an orthopedist and a neurologist, who both examined plaintiff, found normal ranges of motion on her left ankle, and reached the same conclusion that she sustained a resolved ankle sprain (*see Beatty v Miah*, 83 AD3d 610 [2011]). In response, plaintiff failed to present any objective findings that she sustained any serious injury. While she submitted an MRI report, that report did not indicate that anything was wrong with her ankle, other than some swelling, which is not a serious injury. In addition, plaintiff failed to submit a recent examination finding limitations in range of motion, after defendants' expert found none (*see Shu Chi Lam v Wang Dong*, 84 AD3d 515 [2011]). Finally, plaintiff's testimony refuted any 90/180-day claim, since she testified that she was confined to her home "[m]ostly the first week" and confined to her bed the "first few days, about two or three days" (*see Lopez v Eades*, 84 AD3d 523 [2011]).

Accordingly, the question before us is whether the motion court properly found that the serious injury threshold was not at issue because plaintiff's personal injuries did not arise out of an automobile accident within the meaning of the No-Fault Law. The seminal case on this issue is *Walton v Lumbermens Mut. Cas. Co.* (88 NY2d 211 [1996]). In *Walton*, the Court of Appeals made clear that, under the plain language of the statute, the essential question in determining whether a given injury is covered by the No-Fault Law is whether the plaintiff's injury arises out of the "use or operation" of the automobile (*id.* at 213). The statute, however, did not define "use or operation." In *Walton*, the issue arose within the context of no-fault, basic

---

1. "First-party benefits" are payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle (Insurance Law § 5102 [b]). The first $50,000 in medical expenses and lost earnings constitute basic economic loss (Insurance Law § 5102 [a]).

economic benefits. Such benefits under the No-Fault Insurance Law, the Court held, are premised on the happening of an automobile accident. That is, the vehicle must be the proximate cause of the plaintiff's injury (*id*. at 214-215).

The *Walton* Court explained that the proximate cause limitation was needed to circumscribe the benefits of the No-Fault Law in line with that law's purposes. "Its purposes were to remove the vast majority of claims arising from vehicular accidents from the sphere of common-law tort litigation, and to establish a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of such accidents" (*id*. at 214). The No-Fault Law assures that every auto accident victim would be compensated promptly without regard to fault, that "the vast majority of auto accident negligence suits" would be eliminated, "freeing our courts for more important tasks," and that "substantial premium savings [would accrue] to all New York motorists" (*Argentina v Emery World Wide Delivery Corp*., 93 NY2d 554, 562 [1999] [internal quotation marks and citations omitted]). Similarly, the No-Fault Law avoids litigation costs including the burden of attorneys' fees that cut into the amounts ultimately received by accident victims (*see* Prosser and Keeton, Torts § 84, at 600-607 [5th ed]).

The No-Fault Law works to ameliorate these problems, but "not all injuries in and among motor vehicles were meant to benefit from the expediency provided by the No-Fault Law" (*Argentina*, 93 NY2d at 562). Thus, the proximate cause limitation was necessary to avoid an overbroad application of the No-Fault Law (*id*.). "Any other rule would permit recovery for claims based on back strains, slip-and-fall injuries, and other similar injuries occurring while the vehicle is being used but which are wholly unrelated to its use" (*Walton*, 88 NY2d at 215).

In *Walton*, the Court found that the accident fell outside the ambit of the No-Fault Law. The facts in *Walton* are instructive. The plaintiff, a truck driver, was injured while delivering goods to a supermarket. He backed his employer's tractor trailer up to the supermarket's loading dock, got out of the truck, and opened the rear cargo door (*id*. at 213). The supermarket provided an apparatus called a "levelator" to facilitate delivery and, after the plaintiff raised the levelator to the same height as the truck bed and attached plates from the levelator to the truck, a ramp was created that enabled him to transfer goods from the truck

to the levelator. After placing the goods onto the levelator, he could then lower the levelator to the height of the loading dock and transport the goods to the loading dock. While using the levelator and standing on it with a load of products, the levelator tipped over and threw him to the ground, causing him injuries (*id.*). The Court found that the truck was not the proximate cause of Walton's injuries; they arose out of the operation of the levelator (*id.* at 214-215).

As *Walton* and its progeny make abundantly clear, the proximate cause requirement of the No-Fault Law is not established merely because injuries occurred during the occupancy of or while entering or exiting a vehicle. Adopting this approach would be tantamount to equating proximate cause with the term "occupying" a vehicle. However, more than occupancy is required to establish a causal link between a motor vehicle and a claimant's injuries. Instead, what *Walton* requires for the No-Fault Law to apply is that the motor vehicle itself be the instrumentality which produces the injuries (*compare Zaccari v Progressive Northwestern Ins. Co.*, 35 AD3d 597 [2006], *and Sullivan v Barry Scott Agency, Inc.*, 23 AD3d 889 [2005], *with Mazzarella v Paolangeli*, 63 AD3d 1420 [2009], *lv denied* 13 NY3d 708 [2009]).

For example, in *Sochinski v Bankers & Shippers Ins. Co.* (221 AD2d 889 [1995]), the Third Department held that the claimant did not qualify for first-party, no-fault benefits even though the injury occurred while the claimant was occupying a motor vehicle. Specifically, the insured was allegedly injured when airborne particles caused by sandblasting at a highway construction site entered the car's open window and lodged in his eyes. The court held that the claimant did not qualify for first-party, no-fault benefits because the motor vehicle was wholly incidental to the event which produced the injury; it was not the instrumentality, i.e. proximate cause, of the injury (*id.*).

Conversely, in *Matter of Farm Family Cas. Ins. Co. (Trapani)* (301 AD2d 740 [2003]), the claimant's injuries, which occurred while alighting from a motor vehicle, were deemed to fall within the ambit of the No-Fault Law where the vehicle itself was the instrumentality that caused the claimant's injuries. In *Trapani*, the driver lost control of her car and struck a utility pole, causing the power lines to short out and rain sparks and hot pieces of wire down onto the 75-year-old claimant, who was standing in the garden of her home along the roadway. In attempting to run from this hazard, claimant fell and sustained injuries to her

head and left knee. The court found that the vehicle proximately caused the claimant's injuries since the hazard that caused the fall was triggered by the impact of the car on the pole (*id.*).

In this case, under any fair interpretation of the evidence, it cannot be said that the vehicle in question was the instrumentality that caused plaintiff's fall. First, her accident did not arise out of the "inherent nature" of the bus; she stepped into a hole and fell. Second, the accident did not arise within the "natural territorial limits" of the bus; she fell on the street. And third, while the bus may have positioned plaintiff near the condition which ultimately produced the injury, by letting her off in front of the hole, the bus itself was not the instrumentality that produced the alleged injury. Instead, the act of stepping into the hole and twisting her ankle produced plaintiff's sprained ankle (*cf. Matter of Travelers Prop. Cas. Co. v Landau*, 27 AD3d 477 [2006] [no-fault does not apply where claimant was struck while preparing to enter a parked car]; *Matter of New York Cent. Mut. Fire Ins. Co. [Hayden—Allstate Ins. Co.]*, 209 AD2d 929 [1994] [no-fault does not apply to personal injuries suffered by a passenger who got out of a vehicle and fell through a hole in a railroad trestle]). As the Court of Appeals stated, "Where, as here, the plaintiff's injury was caused by an instrumentality other than the insured vehicle, liability for the losses sustained are more properly addressed outside the area of no-fault motor vehicle insurance" (*Walton*, 88 NY2d at 214).

Defendants rely on a recent decision from the Second Department, with a seemingly similar fact pattern. In *Manuel v New York City Tr. Auth.* (82 AD3d 1059 [2011]), the plaintiff alleged that he was injured when he fell in a hole in the street while alighting from a bus. After a trial on the issue of liability, the jury found that the defendant was negligent, and that its negligence was a substantial factor in causing the plaintiff's accident, and that the plaintiff was not negligent.

The Second Department, however, ordered a new trial, because the issue of whether the plaintiff sustained a serious injury within the meaning of the No-Fault Law should have been submitted to the jury. In the court's view, the No-Fault Law applied because the negligent operation of the bus was the proximate cause of plaintiff's injuries, where, like here, the plaintiff's theory of liability was that the accident resulted from the bus driver's positioning of the bus next to a hole in the street when he pulled into the bus stop. The Court also found it significant that the plaintiff was not completely outside of the bus when the accident occurred.

Although it is unclear what the Court meant when it stated that the plaintiff was not completely outside of the bus when the accident occurred, to the extent the decision in *Manuel* reaches a contrary conclusion under seemingly similar circumstances to this case, we decline to follow it as inconsistent with *Walton*. In *Manuel*, the Court seems to be conflating negligence during the use of a vehicle with the additional requirement of the No-Fault Law that the vehicle itself be the proximate cause of the victim's injuries. The terms, however, are not synonymous. Indeed, in *Argentina v Emery World Wide Delivery Corp.* (93 NY2d 554 [1999]), the Court of Appeals highlighted the differences, in distinguishing Vehicle and Traffic Law § 388 (1), which imposes liability on all vehicle owners for accidents resulting from negligence in the permissive "use or operation" of their vehicles, with the No-Fault Law. In *Argentina*, the Court held that under Vehicle and Traffic Law § 388 (1) the vehicle need not be the proximate cause of the victim's injury before the vehicle's owner may be held liable, thereby distinguishing *Walton*, which requires that the vehicle be the proximate cause of the victim's injuries to trigger the No-Fault Law.

In *Argentina*, the plaintiff suffered injuries when a steel plate fell on him while he was unloading cargo from a truck owned by the defendants. He and his spouse sued the defendants in the United States District Court for the Southern District of New York, claiming that the defendant vehicle owner was liable for their damages under Vehicle and Traffic Law § 388 (1), which, as noted above, imposes liability on all vehicle owners for accidents resulting from negligence in the permissive "use or operation" of their vehicles (*id.* at 558). Relying on *Walton*, the District Court granted the defendants' motions for summary judgment on the ground that the vehicle itself was not a proximate cause of the injury (*id.*). After plaintiffs appealed, the United States Court of Appeals for the Second Circuit certified several questions to the New York State Court of Appeals, including whether, under Vehicle and Traffic Law § 388 (1), the vehicle must have been the proximate cause of the injury before the vehicle's owner could be held vicariously liable (*id.*).

As to this question—whether liability under Vehicle and Traffic Law § 388 (1) is predicated upon the vehicle being a proximate cause of the injury—the *Argentina* Court held in the

negative (*Argentina*, 93 NY2d at 554).[2] The Court held that the district court had erroneously relied upon *Walton* when it interpreted "use or operation" pursuant to Insurance Law § 5103 (a) (1) synonymous to the standard under Vehicle and Traffic Law § 388 (1). The Court explained that the two laws are distinct, with different purposes. The Court therefore held that in light of the differing purposes, the No-Fault Law (section 5103 [a] [1] of the Insurance Law) and section 388 (1) of the Vehicle and Traffic Law "should not be interpreted identically" (*id.* at 561-563). Accordingly, the Court concluded:

> "The touchstone of no-fault liability is loss from the use or operation of a vehicle regardless of fault. It was enacted to compensate for injuries without proving negligence. On the other hand, the touchstone of section 388 (1) is injury resulting from the negligence in the use or operation of a vehicle . . . To read an additional limitation into section 388 (1) and require that the vehicle itself be the instrumentality or a proximate cause of plaintiff's injury would tend to circumvent the statute's negligence requirement and unduly limit its intended beneficial purpose" (*id.* at 562-563).

Thus, in *Argentina*, the Court of Appeals held that the liability of an owner pursuant to section 388 (1) does not require that "the vehicle" be a proximate cause of the injury (*id.* at 563). Rather, the Court stated that the standard under which vicarious liability attaches under the statute is narrower: "Negligence in the use of the vehicle must be shown, and that negligence must be a cause of the injury" (*id.* at 562).

In *Manuel*, however, the Second Department considered the bus driver's positioning of the bus next to a hole in the street, when he pulled over at the bus stop, to be a sufficient predicate to trigger the No-Fault Insurance Law. Of course, that conduct would be sufficient to trigger section 388 (1), which imposes liability on all vehicle owners for accidents resulting from negligence in the permissive use of their vehicles. But under *Walton*, this is not sufficient to trigger the No-Fault Law, which contains the additional requirement that the vehicle be the

---

2. The Second Circuit also certified the question to the New York Court of Appeals of whether, under Vehicle and Traffic Law § 388 (1), loading and unloading constituted "use or operation" of a vehicle. As to this question, the New York Court of Appeals held in *Argentina* that loading and unloading constituted "use or operation" under the definition of Vehicle and Traffic Law § 388 (1).

proximate cause of the injury (*cf. Travelers Prop. Cas. Co. v Landau*, 27 AD3d at 477-478; *Matter of New York Cent. Mut. Fire Ins. Co. [Hayden], supra,* 209 AD2d 929 [1994]). We thus hold, that liability for the injuries sustained from a fall in a hole after alighting from a bus are more properly addressed outside the area of the No-Fault Law (*see Toolsie v New York City Tr. Auth.*, 55 AD3d 476 [2008] [triable issue of fact existed regarding whether, by stopping the bus several feet from the curb, defendant breached its duty to plaintiff to stop the bus at a place from which she could safely disembark]; *see also Malawer v New York City Tr. Auth.*, 6 NY3d 800 [2006]).

Accordingly, the order of the Supreme Court, Bronx County (Faviola A. Soto, J.), entered May 26, 2010, which, to the extent appealed from as limited by the briefs, denied defendants Manhattan and Bronx Surface Transit Operating Authority and New York City Transit Authority's cross motion for summary judgment dismissing the complaint based on the failure to establish a serious injury within the meaning of Insurance Law § 5102 (d), should be affirmed, without costs.

FRIEDMAN, J.P., SWEENY, ACOSTA and ABDUS-SALAAM, JJ., concur.

Order, Supreme Court, Bronx County, entered May 26, 2010, affirmed, without costs.